## FEDERAL PUBLIC DEFENDER
### DISTRICT OF NEW JERSEY

**RICHARD COUGHLIN**
FEDERAL PUBLIC DEFENDER

1002 Broad Street
Newark, New Jersey 07102

**CHESTER M. KELLER**
FIRST ASSISTANT

(973) 645-6347   Telephone
(973) 645-3101   Facsimile

October 21, 2013

Honorable Katharine S. Hayden, U.S.D.J.
United District Court, District of New Jersey
Post Office Building, Courtroom 05
Newark, NJ 07102

>    Re:  **Diesuseul Jean v. Juan Mattos, Jr. United States Marshall
>    Civil Case No. 13-cv-5346 (KSH)**

Dear Judge Hayden:

Please accept this letter brief in support of Dieuseul Jean's Petition for Writ of Habeas Corpus in connection with the Government's motion seeking his extradition to Canada.  Through this petition, Mr. Jean seeks habeas review of a court order filed August 22, 2013, granting extradition.  Specifically, he contends that that there is no probable cause warranting extradition to Canada.   In support of his petition, Mr. Jean respectfully submits this letter brief.

**Procedural History**

Dieuseul Jean ("Jean"), a citizen of Haiti, is currently being held in the custody of the United States Marshals pursuant to a request from Canada to extradite Mr. Jean as a suspect in a nearly 20-year-old murder case.  The procedural history is as follows -

---

On March 19, 2013, the United States filed a Complaint in the United States District Court, District of New Jersey to extradite Mr. Jean to Canada.  Mr. Jean was later arrested on March 22, 2013 and remains in the custody of the United States Marshals.[1]  The Office of the United States Attorney (Government) filed a brief in support of his extradition on June 11, 2013.  Mr. Jean filed a reply brief on July 29, 2013, challenging extradition on the grounds that the Government failed to establish probable cause warranting extradition to Canada.  An extradition hearing was held on August 21, 2013 before United States Magistrate Judge Mark Falk.  Judge Falk granted the Government's request and recommended the extradition of Mr. Jean.  On August 22, 2013, Judge Falk formally entered an Order granting extradition.  Mr. Jean then filed an Emergency Motion for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on September 6, 2013. Through this petition, Mr. Jean again opposes the Government's motion to extradite him and challenges Judge Falk's findings and recommendation granting the Government's motion.  He asks that this Court reverse the recommendation for extradition to Canada, and allow him to return to his native country, Haiti.

---

1  The underlying case was captioned United States v. Jean and was docketed as criminal number 13-3588 (MF).

**Statement of Facts:**

Pursuant to the Extradition Treaty Between Canada and the United States of America,[2] Canadian authorities made a formal request for the extradition of Mr. Jean.[3]  He is wanted in connection with the murder of Ms. Juthlande Pierre ("Pierre").  Mr. Jean and Ms. Pierre were allegedly seen together on December 24, 1995.  Shortly after Christmas 1995, Mr. Jean left Canada and moved to New Jersey.  On January 15, 1996, police discovered Ms. Pierre's body in the basement of the home she had been renting.  Mr. Jean and Ms. Pierre had allegedly been in a romantic relationship, but at the time of her death, they were not a couple.  On January 17, 1996, the Director of Criminal and Penal Prosecutions of Quebec charged Mr. Jean with one count of murder, following which Justice of the Peace Baribeau issued a warrant for his arrest.  On March 22, 2013, Mr. Jean was arrested by the United States Marshals pursuant to the previously issued Canadian arrest warrant. Mr. Jean denies any involvement in the death of Ms. Pierre.

The Government filed a petition in support of his extradition pursuant to 18

---

2  United States and Canada, 27 UST 983 TIAS 8237.
3  Attached as Exhibit A are the documents prepared by Canada in support of the application for extradition, as provided by the Government in their motion for extradition.  These are the only documents that Mr. Jean is aware were included in the application.

U.S.C. § 3184.  For facts and evidence to establish the requisite probable cause, the Government's petition for extradition almost exclusively relies on the Summary of Facts ("Appendix D") provided by the Canadian government. [4]   Appendix D is included with the documents attached as Exhibit A.  According to Appendix D, Ms. Pierre called her friend Ainnan Ahmed Farhan ("Farhan") on December 24, 1995 regarding a party.  Farhan later picked up both Mr. Jean and Ms. Pierre from Ms. Pierre's house and drove them to the party.  On December 25, 1995, Farhan eventually drove both Ms. Jean and Pierre back from the party at approximately 4:30 a.m.  Farhan entered Ms. Pierre's home and left approximately 15 minutes later, which was the last time that Ms. Pierre was seen alive.  Also, according to the allegations in Appendix D, another friend of Ms. Pierre's, Marie Luce Alteme, called her house at 12:30 a.m. on December 25, 1995.  Mr. Jean answered the phone and told her that he had not seen Ms. Pierre since the previous morning.    At approximately 1:00 p.m. that day, Mr. Jean allegedly borrowed a hammer from Ms.

---

4  The Canadian government also sent fingerprint information and photographs of the individual they were seeking.  According to Mr. Jean, only one of the photos is actually him.  Furthermore, the fingerprints themselves do not connect Mr. Jean to the murder or even to the alleged scene of the murder.  Rather they were on file due to a prior incident unrelated to this case.  Accordingly, nothing about the finger prints included in Canada's submission relates to the alleged crime and should not form the basis for probable cause.

Pierre's neighbor and returned it four hours later.  Appendix D does not specify whether the Canadian authorities ever seized or inspected the hammer.  Appendix D states that former Canadian Detective Sergeant Paul Langlais obtained a receipt from the Kentour Bus Company of Montreal for a one-way bus ticket, dated December 28, 1995 to Newark, New Jersey in the name of "Dieuseul Jean."

As stated above, the Government's case is based almost entirely on the statements contained in Appendix D.  Similarly, the Criminal and Penal Prosecuting Attorney from Canada, Dany Jean, relies on Appendix D to establish a prima facie case against Mr. Jean.  Appendix D, however, is not a sworn legal document or affidavit with a direct link to the investigation or prosecution of Ms. Pierre's murder. Sergeant Antonio Paradiso authored Appendix D, but did not provide the statement under oath.  Moreover, it is unclear what role Sgt. Paradiso had in the investigation of the underlying murder.  Indeed, he may not have even been part of the investigative team or have had any direct knowledge about the case beyond preparing Appendix D.  In fact, the source of the information provided in Appendix D is never indicated.  Thus it is unclear whether the information provided in the Summary of Facts is based on firsthand knowledge or from other secondary or tertiary source; in fact, Sgt. Paradiso's connection to the information or investigation, or his degree of knowledge about the facts, is not explained in the

application and materials provided by Canada and the Government.  Without clarification on the source of the information in Appendix D, the reliability of this document is questionable; yet it served as the main source of support for the Government's motion and the Court's decision.  In sum, it is simply unclear what or who was the source of the Sergeant's information in preparing the Summary of Facts.

Also problematic is the fact that the information provided in Appendix D is nearly 20 years old, which further makes the source of the information important. Specifically, whether the information is firsthand knowledge from the original investigation, or a summary of a nearly twenty year old file bears negatively on the statement's reliability.

Furthermore, Appendix D does not contain any sworn affidavits or legally certified documentation that would attest to the document's reliability. While the support documents to the extradition application were certified by Consul General Sylvia D. Johnson, she was not connected with the investigation of the murder or the prosecution of this case, and was not involved in preparing the documents.  Similarly, a Certificate of Authentication was signed by Cathy Chalifour, Counsel for the International Assistance Group, Department of Justice of Canada, but it is unclear what, if any, direct role she had in the investigation or

preparation of the materials.  In sum, Appendix D, which serves as the main evidence and support for the extradition, is an unsworn document containing information from unverified origins.

**Standard of Review**

The scope of habeas corpus review of a magistrate judge's order of extradition is limited to whether: (1) the magistrate judge had jurisdiction; (2) the offense charged is within the treaty; and (3) probable cause exists to find the accused guilty. *Sidali v. I.N.S.*, 107 F.3d, 191, 196 (3d Cir. 1998).

## Legal Argument

The Extradition Request and Certification of Dieuseul Jean is unlawful because the Government has not presented sufficient evidence to establish probable cause that Mr. Jean was involved in the murder for which he is a suspect.  While habeas corpus review of an extradition order under a treaty with a foreign country is limited, it does include review of "whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez v. Phillps*, 268 U.S. 311, 312 (1925); *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006).

A. **Appendix D serves as the main support for the Government's motion for extradition, and it is an inherently unreliable document and does not provide a sufficient basis to warrant a finding of probable cause.**

Mr. Jean was arrested on March 26, 2013 and presently remains in the custody of the United States Marshals pursuant to Order dated August 22, 2013.  That Order granted the Government's application for extradition.  Mr. Jean contends that his custody is unlawful because the evidence offered by the Government in support of the application for extradition was not sufficiently supported by probable cause, therefore the Order is flawed and should be vacated.  Lack of probable cause in this matter is directly tied to the Government's overreliance on Appendix D, an uncertified document that summarizes a list of nearly twenty year old allegations from an unknown source.  Although the documents submitted by Canada list Sgt. Paradiso as the author of the documents, his role in the investigation and more importantly his source of information in preparing the document are not explained. Mr. Jean submits that given the unsworn nature of Appendix D and the unknown origins of the allegations in the appendix, the document is plainly unreliable, and the Government's, and by extension the Court's, singular reliance on this document was not enough to establish probable cause warranting extradition.

As stated above, probable cause is one of the few issues that the Supreme Court and Third Circuit recognize as appropriate for habeas review.  *Fernandez v.*

*Phillips*, 268 U.S. 311, 312 (1925); *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006). The probable cause requirement derives from the Treaty with Canada and 18 U.S.C §3184.  Article 10 section 1 of the Treaty requires an extradition request to be supported by evidence that would be sufficient to justify the committal for trial of the person if the offense had been committed in the requested State.  Additionally, Section 3184 of Title 18 of the United States Code requires that the government produce evidence sufficient to sustain the charge at the extradition hearing.  18 U.S.C § 3184.  In short, the court must determine whether there is probable cause to believe that the defendant is guilty of the crimes charged.  *Sidali*, 107 F.3d at 197.  Mr. Jean again submits that Appendix D is not sufficient evidence or reliable enough to constitute probable cause of guilt in this case.

Probable cause is a broad concept that is ultimately determined by a totality of the circumstances analysis. *Illinois v. Gates*, 462 U.S. 213, 239 (1983).  Generally speaking, probable cause is established if a person of ordinary prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the accused. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).  Although probable cause remains a flexible standard, probable cause must be based on more than a "bare bone" affidavit. *United States v. Wilhem*, 80 F.3d 116, 121-122 (4th Cir. 1996).  Accordingly, when making a probable cause determination, the issuing magistrate judge must examine

the veracity and basis of knowledge of any person supplying hearsay information. *Gates*, 462 U.S. 213 at 239.  Affidavits based on hearsay information must contain additional corroborating information that attests to the reliability of the hearsay information.  *Gates*, 462 U.S. 213 at 231-234.  In this case, the Government's main source of information was a "bare bone" Statement of Facts that was a summary of nearly twenty-year-old allegations.  The document was not signed, nor was there an affidavit from the author of the Statement, attesting to the reliability of the "facts" provided in Appendix D.

In the context of probable cause based on an informant's tip, courts have found that an officer's subsequent reliance on an anonymous tip was unreasonable without any additional corroboration or independent investigation.  *United States v. Ritter*, 416 F.3d 256, 264 (3d Cir. 2005).  Corroboration generally requires more than the verification of a few innocent details.  *United States v. Gibson*, 928 F.2d 250, 254 (8th Cir. 1991).   Although this case does not involve a warrant based on a confidential informant, this case does present similar reliability concerns with respect to the district court's reliance on Appendix D.

As discussed above, it is noted in the extradition application that Sgt. Paradiso authored Appendix D, but nowhere is it established whether or not he had any personal knowledge of the underlying criminal case; and if he did not have firsthand

knowledge he did not identify the source or sources of his information.  Sergeant Paradiso never claims in the appendix that he personally viewed any of the purported evidence, interviewed any witnesses, conferred with any expert about scientifically based reports, or even reviewed police reports related to the case.  It is unclear if he even participated in the initial investigation or any other part of this case, other than preparing the Statement of Facts for the extradition application.  Finally, and very notably, Sgt. Paradiso did not provide the statement under oath. The Statement of Facts is an appendix to the application; it is not an affidavit.

In *United States v. Weaver*, the Sixth Circuit held that a warrant based on third party hearsay and the statements of a detective who had no personal knowledge of the facts underlying the case did not constitute probable case.  99 F.3d 1372, 1376-1379 (6th Cir. 1996).  In essence, the court in *Weaver* did not find probable cause because the court had no reason to believe the hearsay statements made by an unknown informant, recited by an officer who had no personal knowledge of the informant, and who did nothing to independently verify the hearsay statements of the informant.  *Id*.  As was the case in *Weaver*, the Government's probable cause submission rests on third party hearsay and a detective's recitation of facts for which he has no personal knowledge.  Sergeant Paradiso did nothing to either verify or corroborate the hearsay statements found in Appendix D.   Without further

corroboration, the court is forced to either accept or deny the statements made by Sergeant Paradiso without any basis to justify its conclusion. Accordingly, the Government's submission does not constitute probable cause without additional corroboration or investigations because the evidence is inherently unreliable.

B.  **This case should be distinguished from the caselaw cited in the Opinion.**

In making its initial probable cause determination, Judge Falk and the Government relied on the Eleventh Circuit case *Afanasjev v. Hurlburt* to support their contention that hearsay statements of witnesses summarized in the affidavit of a foreign official may be sufficient to support probable cause in an extradition proceeding. *Hurlburt* dealt with a certificate of extradition based on an unsworn bill of indictment. *Afanasjev v. Hurlburt*, 418 F. 3d 1159, 1163 (11th Cir. 2005). The unsworn bill of indictment at issue in *Hurlburt* was an extensive document spanning 106 pages that provided precise details about the specifics of the alleged fraud. *Id.* at 1162. Unlike the bill of indictment in *Hurlburt*, Appendix D is a two page document that supports the theory that Mr. Jean visited Pierre or Pierre's home on some occasion prior to or after her death. In two separate places within Appendix D, the Government simply states that "The investigation show[s/ed]" something to be true, without stating what evidence or facts support that conclusion. Additionally,

a significant portion of the "evidence" mentioned in Apendix D is non-specific and unverifiable.  The Government alludes to physical and scientific reports but fails to provide even the most basic authentication of this purported evidence.  According to the Government, Jean borrowed a hammer from a neighbor and returned a hammer on December 26, 1995.  However the police never seized nor inspected the hammer.  Additionally, the Government did not include any forensic reports although Appendix D states that a forensic investigation took place.

Probable cause cannot be the mere ratification of the bare conclusions of others.  *Gates*, 462 U.S. at 239.  The unsworn bill of indictment in *Hurlburt*, by virtue of its length and particularity, contained the type of corroboration called for by the Supreme Court in *Gates* that is lacking in this case. *Id.* at 236. Therefore, this case should be distinguished from *Hurlburt* because the Government has not provided sufficient corroboration to bolster the bald assertions present in Appendix D.

Judge Falk also relied on *Bovio v. United States*, where the Seventh Circuit found probable cause even when all of the evidence present in the affidavit was hearsay and the investigator did not indicate how he obtained the information on which the statements were based. 989 F. 2d 255, 260 (7th Cir. 1993).  In *Bovio*, the government relied on a Swedish investigator's sworn statements.  Unlike this case,

13

the investigator in *Bovio* had personal knowledge of the facts behind the case, and personally investigated and interrogated all of the witnesses regarding the events which led to the eventual arrest. *Id.* at 260. Sergeant Paradiso did not have personal knowledge of the underlying facts. The Government did not give any reason why those personally involved in the case's investigation did not provide sworn affidavits or otherwise contribute to the Government's extradition request. In crafting Appendix D, Sgt. Paradiso does not state that he personally viewed any of the purported evidence, conferred with any expert about scientifically based reports, or even reviewed police reports related to the case. Therefore, the instant case can be further distinguished from the cases cited in the magistrate court's opinion because in the present matter it is not certain that the facts relied upon by the court and the Government were based on personal knowledge.

C. **The information in the unsworn appendix is even less reliable because it is almost twenty years old.**

The underlying offense for the extradition motion is a 1995 murder. As discussed above, it is unclear if the information provided by Sgt. Paradiso is firsthand knowledge he attained during the initial investigation of the case, or it is a summary of information collected over the 18 years since Ms. Pierre's death. Regardless of the source, the information is now remote and dated, with both the

14

physical evidence and any testimonial evidence would now be nearly 20 years old, which calls into question its reliability to establish probable cause for extradition. Mr. Jean raised concerns about the staleness and remoteness of the facts and evidence information in this case.

The age of the information is an important factor that the federal magistrate judge did not properly consider in granting the Government's motion.  The Third Circuit has acknowledged that the age of information is important and that older information may not support a finding of probable cause.  For instance, in *United States v. Harvey*, 2 F.3d 1318 (3d Cir. 1993), while discussing warrants, the Third Circuit noted that the "age of information supporting a warrant application is a factor in determining probable cause."  *Id*. at 1322, *See also United States v. Forsythe*, 560 F.2d 1127, 1132 & n.6 (3d Cir. 1977). The circuit court's opinion in that case went on to explain, "If too old, the information is stale and probable cause may no longer exist."  *Harvey*, 2 F.3d at 1322, citing *United States v. McNeese*, 901 F.3d 585, 596 (7th Cir. 1990).  The Third Circuit's reasoning in *Harvey* should readily apply to his petition.   Applying the logic from these cases, the remote date of the offense, and the unknown date of the "evidence" in Appendix D, significantly weakens the case for probable cause.

Thus any testimony or evidence used to prepare the Summary of Facts is also

15

compromised by the passage of time. The memories of witnesses from the original investigation has likely faded over the past 18 years, including the memories of officers that participated in the investigation.   Also any recent testimony or statements that may have been used to prepare Appendix D would not be as reliable as witness information provided at the time of the offense.   Since the source of the information provided in Appendix D is unknown, and the date the information was secured is also unknown, the overall reliability of the allegations in the Statement of Facts is questionable.   In a concurring opinion Justice Brennan, discussing the handicap the passage of time placed on the defense, observed:

> The passage of time by itself, moreover, may dangerously reduce his capacity to counter the prosecution's charges. Witnesses and physical evidence may be lost; the defendant may be unable to obtain witnesses and physical evidence yet available.  His own memory and the memories of his witnesses may fade.  Some defenses, such as insanity, are likely to become more difficult to sustain; as one court has stated "passage of time makes proof of any fact more difficult."

*Dickey v. Florida*, 398 U.S. 30, 42 (1970) (concurring opinion), citing *Williams v. United States*, 250 F.2d 19, 23 (D.D.C. 1957).   An even stronger caution against dated testimony and evidence was issued by the Supreme Court in *Wilson v. Garcia,* where the Court wrote "[a] federal cause of action 'brought at any distance of time' would be' utterly repugnant to the genius of our laws.' Just determinations of fact

16

cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost."  471 U.S. 261, 271 (1985) (overturned on other grounds) citing *Adams v. Woods*, 6 U.S. 336 (1805).  Again, these cases strengthen Mr. Jean's challenge to a finding of probable cause.

Accordingly, Mr. Jean submits that the nearly 20 years that have passed since the murder of Ms. Pierre is a major factor in evaluating the motion for his extradition. The significant passage of time since the crime and initial investigation are factors that weigh heavily against a finding of probable cause. He argues that the federal magistrate judge did not give sufficient consideration to this important factor.

**Conclusion**

The Extradition Certification and Order of Commitment fails to establish a sufficient basis for holding Mr. Jean.  Mr. Jean requests discharge from the custody of the United States Marshals pursuant to the certification and commitment.  Mr. Jean also requests that the Stay of Extradition remain in effect throughout the proceedings in the district and circuit courts.

Respectfully submitted,

Date: October 21, 2013          /s/ Lorraine Gauli-Rufo
                                LORRAINE GAULI-RUFO, ESQ.
                                Federal Public Defender
                                Attorney for Dieuseul Jean

17