UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------x
DIEUSEUL JEAN                          :       Hon. Katherine S. Hayden, U.S.D.J.
                                       :
     v.                                :       Crim. No. 13-5346
                                       :
JUAN MATOS                             :
---------------------------------------------------------x


# MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS


PAUL J. FISHMAN
United States Attorney
District of New Jersey
970 Broad Street
Newark, New Jersey 07102


On the Brief:

ELIZABETH M. HARRIS
Assistant United States Attorney

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

       A.       The Killing of Juthlande Pierre and Investigation …......………….….……….…2

       B.       Petitioner Is Charged with First-Degree Murder ………………..……….….…3

       C.       Petitioner Is Identified and Arrested ……………………………….…………..…4

       D.       The Extradition Hearing ……………...……………………………….….…….5

LEGAL ARGUMENT

II.       Legal Standard  ………………….…………………………….…………....….… 6

III.      The Magistrate Judge Correctly Found Hearsay Evidence Admissible in the Extradition Hearing and a Sufficient Basis for Probable Cause ………………………….…………..6

CONCLUSION............................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                         **Page(s)**

*Afanasjev v. Hurlburt*,
  418 F.3d 1159 (11th Cir. 2005) ...................................................................................... 11, 12

*Aquino v. Plousis*,
  10-Civ-1214 (SRC), 2010 WL 4038828 (D.N.J. Oct. 14, 2010) ......................................... 9, 10

*Artukovic v. Rison*,
  784 F.2d 1354 (9th Cir. 1986) ................................................................................................ 7

*Bingham v. Bradley*,
  241 U.S. 511 (1916) ................................................................................................................ 8

*Castro Bobadilla v. Reno,*
  826 F. Supp. 1428 (S.D. Fla.1993) ......................................................................................... 8

*Collins v. Loisel,*
  259 U.S. 309 (1922)………………….………………………………………………….…7

*Collins v. Miller,*
  252 U.S. 364 (1920) ................................................................................................................ 6

*Fernandez v. Phillips,*
  268 U.S. 311 (1925) ................................................................................................ 5, 6, 7, 13

*Glucksman v. Henkel*,
  221 U.S. 508 (1910) ................................................................................................................ 7

*Harshbarger v. Regan*,
  599 F.3d 290 (3d Cir. 2010) .................................................................................................... 8

*Hoxha v. Levi,*
  465 F.3d 554 (3d Cir. 2006) ................................................................................................ 6, 8

*In re Extradition of Neto,*
  1999 WL 627426 (S.D.N.Y. Aug. 17, 1999) ........................................................................ 10

*Jhirad v. Ferrandina*,
  536 F.2d 478 (2d Cir. 1976) .................................................................................................. 7

*Man-Seok Choe v. Torres*,
  525 F.3d 733 (9th Cir. 2008) ................................................................................................ 10

*Sidali v. I.N.S.*,
  107 F. 3d 191 (3d Cir. 1997) ............................................................................................. 5, 7

*Sindona v. Grant*,
  619 F.2d 167 (2d Cir.1980) ............................................................................................... 7, 8

*United States v. Harvey*,
  2 F.3d 1318 (3d Cir. 1993) ................................................................................................. 12

*United States v. Forsythe*,
  560 F.2d 1127 (3d Cir. 1977) ............................................................................................. 12

*United States v. Spikes*,
  158 F.3d 913 (6th Cir. 1998) .............................................................................................. 13

*Zanazanian v. United States of America*,
  729 F.2d 624 (9th Cir. 1984) ..................................................................................... 7, 10, 11

## **Statutes**

Title 18, United States Code, Section 3190 ...................................................................... 10, 11, 12

Title 28, United States Code, Section 2241 ................................................................................... 6

## **Other Authority**

Fed. R. Crim. P. 1 ............................................................................................................. 15, 16, 17

Fed. R. Crim. P. 54 ...................................................................................................................... 12

Fed. R. Evid. 1101 ....................................................................................................................... 13

**PRELIMINARY STATEMENT**

This case commenced with the request of Canada for the extradition of Dieuseul Jean (also known as Jean Gardy Mentor, hereinafter "Petitioner") to prosecute him for the stabbing death of his former girlfriend, Juthlande Pierre ("Pierre"), in 1995. In March 2013, Petitioner was located as residing in Irvington, New Jersey, and arrested. On August 22, 2013, the Honorable Mark Falk, U.S.M.J., issued an order finding Petitioner extraditable.

Now, Petitioner challenges the order of extradition by filing the instant petition for writ of habeas corpus (the "Petition"). In sum and substance, Petitioner challenges Magistrate Judge Falk's reliance on hearsay evidence. A long line of cases holds that the certification of extradition under 18 U.S.C. § 3184 may be based on hearsay, including a summary of facts prepared by a foreign prosecutor or law enforcement official. Even the United States Supreme Court has noted that documents and hearsay evidence alone may support a finding of probable cause and may form the basis for extradition. To hold otherwise would require enforcement officials from a foreign country to come to the United States in extradition proceedings.

The Government presented to Magistrate Judge Falk more than probable cause for an offense covered by the Extradition Treaty between the United States and Canada to support the Certificate of Extraditability and, consequently, dismissal of the Petition.

## STATEMENT OF FACTS

A.     The Killing of Juthlande Pierre and Investigation

In December 1995, a restraining order issued by a Canadian court prohibited Petitioner from contacting Pierre, his former girlfriend. Exhibit A (Complaint dated March 19, 2013 ("Compl.")) ¶ 5(a).  Nonetheless, eyewitnesses saw Petitioner with Pierre between December 23, 1995 and December 25, 1995, when Pierre was last seen alive. *Id.* On December 24, Pierre called a friend, Ainnan Ahmed Farhan ("Farhan"), about going to a party together. *Id.* ¶ 5(b). That evening, Farhan arrived at Petitioner's home and picked up Pierre and Petitioner, drove them to the party, and drove them back to Pierre's home at approximately 4:30 a.m. the following morning. *Id.* Farhan left Pierre's home approximately 15 minutes later. *Id.*

At 12:30 p.m. on December 25, Marie Luce Alteme ("Alteme"), a friend of the victim, called Pierre's home. *Id.* ¶ 5(c). Petitioner answered Pierre's telephone and told Alteme that he had not seen Pierre since the previous morning.  *Id.* At approximately 1:00 p.m. the same day, Petitioner borrowed a hammer from Pierre's neighbor. *Id.* ¶ 5(d). Petitioner returned the hammer four hours later, and was then observed leaving Pierre's home in a car. *Id.*

The next day, Petitioner went to his cousin's home, Cadet Alourdes ("Alourdes").[1] Petitioner asked Alourdes to take care of his car because he was afraid the police would arrest him, and that he was not permitted to have a car in his possession. *Id.* ¶ 5(e).  Although Petitioner told Alourdes that he would be back the next day, he never returned. *Id.*

Later that day, Petitioner attempted to pick up Pierre's daughter from Alteme's home.  *Id.* ¶ 5(f).  Alteme refused to give Petitioner the child. *Id.*

---

[1] Notably absent from Petitioner's "Statement of Facts" is the testimony of his cousin, Cadet Alourdes. As stated herein, Petitioner's own cousin provides testimony damaging to Petitioner's defense against the Canadian charges.

On December 29, 1995, Alourdes received a collect telephone call from Petitioner, who was in Newark, New Jersey. *Id.* ¶ 5(g). Alourdes refused to accept the charges and the call was disconnected. *Id.*

On January 15, 1996, Pierre's landlord entered her home and noticed that the living room carpet was nailed to the floor and that there were red stains beneath the carpet. *Id.* ¶ 5(i). Police were called to the premises to investigate. *Id.* Shortly after police arrived, Pierre's body was discovered in the basement of her home. *Id.* Her body had been wrapped in a carpet beneath a pile of debris. *Id.*

An autopsy report concluded that Pierre had died by asphyxiation to the neck. *See* Ex. B (Request for Extradition), Appendix D. The pathologist also found "knife wounds" on Pierre's body that had been inflicted with "a sharp cutting instrument in the face, neck, shoulders, right arm and both hands." *Id.*

**B.    Petitioner Is Charged with First-Degree Murder**

On January 17, 1996, two days after Pierre's body was discovered, Alourdes provided police with a photograph of herself and Petitioner taken in December 1995. Ex. B, Appx. E. In the photograph, Petitioner is wearing a bracelet identical to the bloody bracelet found at Pierre's house. *Id.* at Appx. D. The same day, the Director of Criminal and Penal Prosecutions of Quebec charged Petitioner with one count of first-degree murder, in violation of Section 235 of the Criminal Code of Canada, and an arrest warrant was issued the same day. Ex. A (Compl.), ¶ 4. Two days later, authorities learned that Petitioner had fled the jurisdiction weeks earlier. On January 19, 1996, Canadian police obtained a receipt from a bus company in Montreal for a one-way bus ticket, dated December 28, 1995—three days after Pierre was killed—to Newark, New Jersey, in the name of "Dieuseul Jean." *Id.*, ¶ 5(j).

3

**C.     Petitioner Is Identified and Arrested**

For 17 years, Canadian and American authorities attempted to locate Petitioner without success.  In early 2013, he was identified as residing in Irvington, New Jersey, under the alias "Jean Gardy Mentor." *Id.* ¶ 10. Fingerprints taken by United States immigration authorities resulted in a match after Petitioner submitted an application to Immigration and Customs Enforcement to obtain United States citizenship. *Id.* For 17 years, Petitioner had no legal status in the United States and resided here undetected. He was arrested on March 22, 2013 pursuant to the provisional complaint and arrest warrant issued by the Honorable Mark Falk, U.S.M.J.

On or about June 11, 2013, the Government of Canada submitted documents, in accordance with Article 9 of the Extradition Treaty, in support of its extradition request. Those documents consist of:

- The Certification of Sylvia D. Johnson, Consul General of the United States at Ottawa, Canada, dated May 9, 2013;

- Certification of Cathy Chalifour, Counsel for the International Assistance Group, Department of Justice of Canada, dated May 9, 2013, to which is attached the sworn statement of Dany Jean, prosecuting attorney for the Director of Criminal and Penal Prosecutions of Quebec (hereinafter, "prosecutor Jean");

- A copy of the sworn statement of prosecutor Jean pursuant to the Terms of Article 9 of the Treaty on Extradition Between the Government of Canada and the Government of the United States of America (hereinafter, the "Jean Statement"), sworn to before Anna Jensen, Commissioner of Oaths;

Attached to the Jean Statement are the following documents:

- Appendix A, a copy of the sworn arrest warrant issued against Petitioner, dated January 17, 1996, by Justice of the Peace Louise Baribeau;

- Appendix B, fingerprint identification documents demonstrating that Petitioner is the same person who is sought in Canada for Pierre's murder;

- Appendix C, a copy of the relevant provision of the Criminal Code of Canada for which Petitioner faces charges; and

4

- Appendix D, Summary of Facts Prepared by Detective Sergeant Antonio Paradiso of the Service de police de la ville de Montreal.[2]

**D.     The Extradition Hearing**

The extradition hearing took place on August 21, 2013, where Magistrate Judge Falk received evidence and heard the arguments of counsel. Petitioner challenged only one of the four elements necessary to issue a certificate of extradition.[3] Petitioner did not contest the enforceability of the treaty between Canada and the United States, that he is charged with murder, or that the crime is an extraditable offense under the treaty. Instead, Petitioner asserted that Canadian authorities lacked probable cause to believe he had committed first-degree murder.

On August 22, 2013, Magistrate Judge Falk issued a certification order and opinion finding Petitioner extraditable under 18 U.S.C. § 3184. Ex. C (Order dated Aug. 22, 2013 (the "Extradition Order")), and Ex. D (Opinion, dated Aug. 22, 2013 (the "Extradition Opinion"). Magistrate Judge Falk considered all of the arguments and evidence before him, including the sworn affidavits submitted by Canada, and concluded that the evidence detailed in the Extradition Request established probable cause that Petitioner committed the offense of murder as defined by Canadian law. Ex. D (Extradition Opinion) at 7-10. Magistrate Judge Falk further found that the Jean Certification provided support for each element of the charged offense, and therefore "the Government's proofs meet the limited threshold of probable cause and are sufficient to support extradition." *Id.* at 8.

---

[2] A copy of the Request for Extradition submitted by Canada is enclosed herein as Exhibit B.

[3] An extradition certificate is ordered where: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought. *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); **Error! Main Document Only.** *Sidali v. I.N.S.*, 107 F. 3d 191, 195 (3d Cir. 1997).

On or about August 29, 2013, Petitioner filed an Emergency Motion to Stay Certification, requesting that a 60-day stay of the Certification of Extraditability and Order of Commitment be granted so that he might file a habeas corpus petition under 28 U.S.C. § 2241. Magistrate Judge Falk denied the request for a stay. The Petition was filed on September 6, 2013, and a brief in support thereof was filed on October 21, 2013.

Petitioner remains in the custody of the United States Marshal pending extradition.

## LEGAL ARGUMENT

### I.     Legal Standard

A magistrate judge's determination of extraditability is reviewed by a district court upon the filing of the petition for habeas corpus. The Supreme Court has repeatedly held that habeas review of extradition is more limited than appeal. *See e.g., Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) (habeas corpus "cannot take the place of a writ of error"); *Collins v. Miller*, 252 U.S. 364, 369 (1920) ("it is ordinarily beyond the scope of the review afforded by a writ of habeas corpus to correct error in the proceedings").

Habeas review is limited to three "extremely limited" grounds: (1) whether the magistrate judge had jurisdiction; (2) whether the offense charged was within the applicable treaty; and (3) whether there was evidence establishing a reasonable ground to believe the accused is guilty. *Hoxha v. Levi,* 465 F.3d 554, 560 (3d Cir. 2006).

### II.    The Magistrate Judge Correctly Found Hearsay Evidence Admissible in the Extradition Hearing and a Sufficient Basis for Probable Cause Found

There is no doubt that Magistrate Judge Falk had jurisdiction to hear this matter, and Petitioner does not suggest otherwise. Petitioner agreed at the extradition hearing that the Canadian offense of murder is an offense covered the applicable treaty. *Hoxha*, 465 F.3d at 560. Petitioner challenges, however, the Government's use of hearsay as the basis for his extradition.

In finding Petitioner extraditable, Magistrate Judge Falk noted that hearsay admissible at an extradition hearing. Ex. D (Extradition Opinion) at 6. Magistrate Judge Falk's ruling is correct, and his opinion point out the shortcomings in Petitioner's argument.

At the outset, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence are expressly inapplicable to extradition proceedings. Fed. R. Crim. P. 1(a)(5); Fed. R. Evid. 1101(d)(3). As a result, hearsay evidence is admissible at extradition hearings and fully supports the court's findings leading to a certification under Section 3184. *Collins v. Loisel*, 259 U.S. 309, 317 (1922) (foreign government did not have to send its agents to the United States for extradition hearing). *See Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986) (unsworn hearsay statements contained in authenticated documents can constitute competent evidence to support a certificate of extradition); *Zanazanian v. United States of America*, 729 F.2d 624 (9th Cir. 1984) (authenticated document containing police officer's report describing witnesses' detailed statements, which incriminated the witnesses themselves and amounted to confessions to participation in Petitioner's illegal narcotics activities, provided sufficient competent legal evidence to support a finding of Petitioner's extraditability).

Hearsay evidence is not only admissible at an extradition hearing, but it may also form the basis of probable cause for extradition. An extradition hearing is not intended to determine whether the evidence is sufficient to justify conviction; that determination is made by the foreign court which ultimately tries the defendant. *Jhirad v. Ferrandina*, 536 F.2d 478, 484-85 (2d Cir. 1976). Rather, the evidence must meet the probable cause standard. *Fernandez*, 268 U.S. at 312; *Glucksman v. Henkel*, 221 U.S. 508, 511 (1910). As the Third Circuit has stated, "the probable cause standard applicable in extradition proceedings is identical to that used by courts in federal preliminary hearings." *Sidali v. I.N.S.*, 107 F. 3d 191, 199 (3d Cir. 1997); *see Sindona v. Grant*,

619 F.2d 167, 175 (2d Cir.1980); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1433 (S.D. Fla.1993), *aff'd*, 28 F.3d 116 (11th Cir. 1994). *See also* Ex. D (Extradition Opinion) at 7 (citing *Hoxha*, 465 F.3d at 561).

Both the Supreme Court and the Third Circuit have expressly approved of the use of hearsay evidence as supporting probable cause to extradite an individual to Canada. *See Bingham v. Bradley*, 241 U.S. 511, 517 (1916) (properly authenticated affidavits of Canadian officials provided sufficient probable cause at extradition hearing); *Harshbarger v. Regan*, 599 F.3d 290 (3d Cir. 2010) (affirming district court's denial of habeas corpus where appellant challenged admissibility of affidavits of Canadian law enforcement officers as inadmissible hearsay, noting that "[t]he extradition treaty between the United States and Canada does not contravene the general rule that hearsay evidence can establish probable cause.").

Despite this case law, Petitioner strains to argue that extradition cannot be ordered because the summary of the facts prepared by Det. Sgt. Antonio Paradiso of the Montreal Police [is an unsworn document by an individual who may not have a "direct link to the investigation or prosecution of [Petitioner]." Pet. Brief at 5. Properly authenticated documents, including the sworn statement of the prosecuting attorney for the Director of Criminal and Penal Prosecutions of Quebec, and a summary of facts prepared by a law enforcement officer, were submitted into evidence at the extradition hearing in this case. Specifically, the Jean Certification includes a lengthy summary of facts prepared by a Det. Sgt. Paradiso of the Montreal Police, and recites all of the evidence pointing to Petitioner as the perpetrator:

- the existence of an order restraining Petitioner from contacting Pierre at the time of her death;
- the lengthy interaction Petitioner had with Pierre between December 24 and December 25, 1995;

8

- the fact that Alteme called Pierre's home at approximately 12:30 p.m. on December 25, 1995, and that Petitioner answered the phone and told Alteme that he had not seen Pierre since the previous morning;

- the fact that, on December 25, 1995, many of Pierre's friends unsuccessfully attempted to communicate with her;

- the testimony of Pierre's neighbor that Petitioner borrowed a hammer at 1:00 p.m. on December 25, 1995;

- the autopsy results concluding that Pierre was asphyxiated and bludgeoned to death;

- the fact that Petitioner told his cousin, on December 26, 1995, that he was afraid he would be arrested;

- the fact that Petitioner's cousin told Canadian police that she never saw Petitioner again;

- the fact that Petitioner attempted to pick-up Pierre's daughter from her friend's house unaccompanied by Pierre;

- the fact that, shortly before Pierre's murder, Petitioner was photographed wearing the bloody bracelet found at the crime scene;

- Petitioner's purchase of a one-way bus ticket from Montreal to Newark three days after Pierre's murder, before Pierre's body was discovered by police;

- The fact that Petitioner placed a collect call to his cousin on December 29, 1995, from Newark, New Jersey;

- Petitioner's fugitive status and discovery 17 years later in Irvington, a city bordering Newark.

Exhibit B (Request for Extradition), App'x D.

Petitioner's conduct both before and after Pierre's death is indicative of consciousness of guilt and, together with all of the other facts in the Canadian Request, provide ample probable cause to believe that Petitioner killed Pierre. In a recent extradition case before this court, the fact that the petitioner fled the foreign country shortly after the victim's death and never returned was compelling probable cause to find the petitioner extraditable. *See, e.g., Aquino v. Plousis*, 10-

9

Civ-1214 (SRC), 2010 WL 4038828, *2 (D.N.J. Oct. 14, 2010)  (petitioner's conduct in fleeing the Republic of the Philippines "when he was alerted about a revitalized investigation into" a double murder, together with his statement blaming colleague for "slopping dumping" a victim's car "where it was easily discovered" provided "more than enough evidence" of probable cause to grant extradition).

Petitioner assails the "summary of the facts" prepared by Det. Sgt. Paradiso because it is an unsworn document. This argument fails for several reasons. First, the Jean Certification and the summary of facts prepared by Det. Sgt. Paradiso were properly authenticated by and certified through the diplomatic channel.  Proof that authentication is proper and legal exists if the documents are accompanied by the certification of an appropriate United States diplomatic or consular officer in the requesting country, attesting that the documents would be admissible for similar purposes in that country. 18 U.S.C. § 3190. Here, the certification of Cathy Chalifour, Counsel for the International Assistance Group, Department of Justice of Canada, attests to the authenticity of prosecutor Jean's signature and all documents appended thereto.

Moreover, courts have long relied on unsworn summaries that are properly authenticated. In *Man-Seok Choe v. Torres*, 525 F.3d 733, 739 (9th Cir. 2008), for example, the magistrate judge "relied on the Korean prosecutor's summary of testimony from [a] witness" to the fugitive's crimes. Although the fugitive argued that the prosecutor's summary could "[ ]not support a finding of probable cause," the court found that "if the evidence submitted in the extradition papers is certified and authenticated in accordance with [the applicable treaty and] § 3190 . . . the magistrate judge is authorized to consider it." *Id.* at 740. *See Zanazanian,* 729 F.2d at 625-27 (finding that police reports summarizing unsworn witness statements, which the fugitive argued consisted of "multiple hearsay," were sufficient to support application for

10

extradition); *In re Extradition of Neto*, 1999 WL 627426, at *5 (S.D.N.Y. Aug. 17, 1999) ("[A] police officer's report describing a witness's statement is admissible evidence in an extradition proceeding, although its reliability may be called into question."). Accordingly, Magistrate Judge Falk correctly considered Det. Sgt. Paradiso's factual summary, which is appended to the Jean Certification, because it is properly authenticated in accordance with Section 3190.

  Moreover, the circumstances surrounding Pierre's death in 1995 and Petitioner's immediate and sudden disappearance from Canada was investigated by the Homicide Unit of the Montreal police department, where Det. Sgt. Paradiso is employed. Like any other law enforcement officer, Det. Sgt. Paradiso has access to the investigative file for the case. Indeed, the summary of facts identifies the sources of information contained therein, including witness names, dates, and other details that bolster the reliability of the allegations lodged against Petitioner. *See Zanazanian*, 729 F.2d at 627 (finding police reports setting forth witness statements to be reliable because they were "abundant in detail, containing specifics of time and place, price and quantity."); *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1165 (11th Cir. 2005), (finding a bill of indictment summarizing witness statements to be reliable in part because it "list[ed] the specific dates of events, include[d] the names of witnesses and victims, and detail[ed] the amount of money that was involved in each transaction"). Petitioner provides no reason for this Court to believe that Det. Sgt. Paradiso could have obtained this information by some other means.

  Petitioner also critiques Magistrate Judge Falk's reliance on *Afanasjev*, 418 F.3d 1159, to support a finding of extraditability. Pet. Memo. at 12-13. Petitioner argues that *Afanasjev* is inapposite because, in that case, the "unsworn bill of indictment … was an extensive document spanning 106 pages that provided precise details about the specifics of the alleged fraud." Pet.

11

Memo. at 12 (citing *Afanasjev*, 418 F.3d at 1162). In *Afanasjev*, the United States, acting on behalf of the government of Lithuania, sought to extradite a man and woman to face charges of investment fraud in Lithuania, pursuant to an unsworn bill of indictment. 418 F.3d at 1161-62. Magistrate Judge Falk was correct in relying on *Afanasjev*.

The central issue in *Afanasjev* was not the length of the indictment submitted by the Lithuanian government, but whether it was properly relied upon by the magistrate judge because it was an unsworn document—the same issue in this case. *Id*. at 1161-1162.  The Eleventh Circuit held that, because the bill of indictment was "properly certified" by the appropriate diplomatic agent pursuant to Section 3190, the district court "was free to consider it in determining whether to certify extradition." *Id*. at 1164.

It should be pointed out that the crimes charged by the Lithuanian government in *Afansjev* and the crime charged by the Canadian government in the present case could not be more different. The appellants in *Afansjev* were charged with defrauding approximately 81 investors of a significant sum of money "[o]ver the course of several years."  *Id*. at 1161-1162. Here, Petitioner is charged with murdering one victim on one day. That that the facts here are not complex or lengthy, or that numerous victims are not involved, reflects the nature of the crime with which Petitioner is charged, not a lack of probable cause to believe he committed the crime.

Finally, Petitioner's claim that the evidence presented by Canadian authorities and relied upon by Magistrate Judge Falk is stale because the crime took place 17 years prior to his arrest rings hollow. Pet. Memo. at 14-15. Petitioner relies on search warrant cases to support his staleness argument. *Id.* at 15 (citing *United States v. Harvey*, 2 F.3d 1318 (3d Cir. 1993); *United States v. Forsythe*, 560 F.2d 1127, 1132 & n.6 (3d Cir. 1977). But those cases do not apply in extradition proceedings, which are specifically excluded from the Federal Rules of Criminal

12

Procedure. *See* Fed. R. Crim. P. 54(b)(5) ("These rules are not applicable to extradition and rendition of fugitives."). The issue of staleness in the context of a search warrant arises when the passage of time between the act underlying the basis for probable cause and the search warrant application indicate that the sought-after evidence will no longer be located at the place to be searched. *See United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). Staleness is not relevant in an extradition hearing. The purpose of an extradition hearing is not to try the underlying charge and find guilt beyond a reasonable doubt. It is for a Canadian court alone to decide if the Canadian first-degree murder statute was violated.

Petitioner should not benefit from his 17-year status as a fugitive. Montreal police did everything it could to apprehend Petitioner for Pierre's murder. The Montreal police interviewed witnesses, obtained corroborating evidence, confirmed the manner of death, and charged Petitioner with first-degree murder—all within days of the discovery of Pierre's body. Canada has waited 17 years since Pierre's murder to bring Petitioner to justice. It should not have to wait longer.

For now, the Canadian government has presented sufficient evidence to show that there is probable cause for Petitioner to be extradited to Canada. Given that this Court need only find "any" evidence to sustain the finding of probable cause, the ruling of Magistrate Judge Falk should be affirmed, and Petitioner should be found extraditable to Canada to face the charge of first-degree murder. *Fernandez*, 268 U.S. at 312.

## **CONCLUSION**

      For the reasons stated herein, the United States requests that the court deny the Petition for Writ of Habeas Corpus.

                                    Respectfully submitted,

                                    PAUL J. FISHMAN
                                  United States Attorney

                                  ___/s/ Elizabeth M. Harris____
                                  ELIZABETH M. HARRIS
                                  Assistant United States Attorney
                                  Tel: 973-645-2913

Dated:  December 20, 2013