# EXHIBIT "A"

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF DIEUSEUL JEAN | Hon. Mark Falk, U.S.M.J. |
| | Mag. No. 13-3588 |
| | COMPLAINT FOR PROVISIONAL ARREST WITH A VIEW TOWARDS EXTRADITION (18 U.S.C. § 3184) |

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

I further state that I am an Assistant United States Attorney with the United States Attorney's Office, District of New Jersey, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

*Elizabeth M. Harris*
Elizabeth M. Harris
Assistant United States Attorney
United States Attorney's Office,
District of New Jersey

Sworn to before me and subscribed in my presence,
on March 19 2013 at Newark, New Jersey

HONORABLE MARK FALK
UNITED STATES MAGISTRATE JUDGE

/Signature of Judicial Officer

## ATTACHMENT A

Canadian authorities have requested the provisional arrest of DIEUSEUL JEAN, who has been charged in Canada with the following crime:

(1) murder, in violation of sections 229 and 231 of the Criminal Code of Canada (CCC), committed on or about December 25, 1995, in Canada, in the Province of Québec, in the District of Montreal.

In accordance with Title 18, United States Code, Section 3184, and the Extradition Treaty between the United States and Canada, as amended by its Protocols.

2

## ATTACHMENT B

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. There is an Extradition Treaty, as amended by Protocols, in force between the United States and Canada, 27 UST 983, TIAS 8237.

2. The Treaty provides in Article 11 for the provisional arrest and detention of alleged fugitives pending the submission of a formal request and supporting documents.

3. In accordance with Article 11 of the Treaty, the Government of Canada has asked the United States for the provisional arrest of Dieuseul JEAN ("JEAN"), with a view toward extradition;

4. According to information provided by Canada in the form authorized by the Treaty, JEAN, a Haitian citizen, is wanted in Canada to stand trial on the charge of murder, in violation of section 229 and section 231 of the Criminal Code of Canada (CCC), committed on or about December 25, 1995, in Canada, in the Province of Québec, in the District of Montreal. On January 17, 1996, the Director of Criminal and Penal Prosecutions of Québec authorized the laying of one count of murder against Dieuseul JEAN, following which Justice of the Peace Baribeau issued a warrant for his arrest.

5. The warrant was issued on the basis of the following facts:

    (a)    A previously entered Canadian court order prohibited JEAN from contacting the victim, Juthlande Pierre ("Pierre"). Nonetheless, JEAN was with Pierre from December 23, 1995 until December 25, 1995, when Pierre was last seen alive.

    (b)    On December 24, 1995, Pierre called a friend, Ainnan Ahmed Farhan ("Farhan), regarding a party. Farhan later picked up Pierre and JEAN, and drove them to the party. Farhan drove Pierre and JEAN back after the party at about 4:30 a.m. on December 25th. Farhan entered Pierre's home and left approximately 15 minutes later.

    (c)    At approximately 12:30 p.m. on December 25, 1995, another friend of the victim, Marie Luce Alteme ("Alteme"), called Pierre's home. JEAN answered Pierre's telephone and told her that he had not seen Pierre since the previous morning, when Pierre was with Farhan.

    (d)    At approximately 1:00 p.m. that day, JEAN borrowed a hammer from Pierre's neighbor. JEAN returned the hammer 4 hours later and was observed leaving Pierre's home in a blue GM vehicle. That day, several of Pierre's friends attempted to contact her, without success.

    (e)    The next day, December 26, 1995, JEAN went to the home of his cousin, Cadet Alourdes ("Alourdes"). There, JEAN asked Alourdes to take care of his car because he was afraid the police would arrest him, and that he

|     | |
| --- | --- |
|     | was not allowed to have a car in his possession. JEAN told Alourdes that he would be back the following day to take care of his car. JEAN never returned to pick up his vehicle. |
| (f) | Later that day, JEAN attempted to pick up Pierre's daughter from the home of Marie Luce Alteme ("Alteme"). Alteme refused, and JEAN left without the child. |
| (g) | On December 29, 1995, Alourdes, JEAN's cousin, received a collect telephone call from JEAN, who was in Newark, New Jersey. Alourdes refused to accept the charges and the call was disconnected. |
| (h) | Investigation by Canadian law enforcement showed that since December 28, 1995, JEAN has not been seen in Canada, and he never appeared for work. |
| (i) | On January 15, 1996, the owner of the house where Pierre lived entered her house and noticed that the carpet in the living room had been nailed to the floor. The owner noticed red stains under the carpet. The homicide unit was called to the premises to investigate. After law enforcement arrived, Pierre's body was discovered in the basement of the home. Pierre's body had been wrapped in a carpet beneath a pile of wood, metal and other objects. Law enforcement believe the victim was killed in her living room and that her body was dragged to the basement. An autopsy report concluded that Pierre had been beaten to death with a sharp object. |
| (j) | On January 19, 1996, former Detective Sergeant Paul Langlais obtained from the Kentour Bus Company in Montreal a receipt for a one-way bus ticket, dated December 28, 1995, to Newark, New Jersey, United States, in the name of "Dieuseul JEAN." |

6. With the assistance of American authorities, Canadian authorities attempted to locate JEAN without any success. Verifications were also made in 1999-2000 with information received that JEAN was seen in Sudan.

7. JEAN is described as a black male with brown eyes and black hair. He was born on February 7, 1961, and is a Haitian citizen. Canadian authorities have provided a copy of a photograph of JEAN with the extradition materials.

8. Canadian authorities have indicated that urgent circumstances exist warranting JEAN's provisional arrest. Specifically, JEAN is wanted for first degree murder, a serious crime for which he has evaded law enforcement for 18 years. Further, JEAN has been living under a false identity and is at risk of being deported to Haiti. Accordingly, there is probable cause to believe that if given the opportunity, JEAN will avoid detention and apprehension by law enforcement in order to further evade law enforcement.

9. The offenses with which JEAN is charged are provided for in Article 2 of the Extradition Treaty, as amended by the Protocols, cited above.

10. JEAN has been identified as residing at 125 Park Place, Apartment #1, Irvington, New Jersey 07111, under the alias "Jean Gardy MENTOR." MENTOR's fingerprints taken by

4

United States immigration authorities resulted in a hit in its system for JEAN, after JEAN submitted an application to obtain United States citizenship.

11. The requesting state has represented that it will submit a formal request for extradition, supported by the documents specified in the Treaty, within 60 days, as required by Article 11 of the Extradition Treaty, as amended by the Protocols.

5