NOT FOR PUBLICATION

**United States District Court
for the District Of New Jersey**

DIEUSEUL JEAN

                      Petitioner,

v.

JUAN MATTOS, JR.

                      Respondent.

Civil No.: 13-5346 (KSH)

**Opinion**

**Katharine S. Hayden, U.S.D.J.**

### I. Introduction

Dieuseul Jean, a citizen of Haiti, is currently in the custody of the United States Marshals pending extradition to Canada, where he is wanted in connection with the 1995 Montreal murder of Juthlande Pierre. On August 21, 2013, Jean appeared before Magistrate Judge Mark Falk for an extradition hearing, contending that he could not be sent to Canada because the probable-cause requirement for extradition was not met. Jean's challenge focused on the reliability and authenticity of the evidence presented by the United States and Canada to support the application for extradition. After the hearing, Judge Falk decided in a written opinion that the requirements of 18 U.S.C. § 3184 (probable cause and otherwise) were satisfied, and therefore certified Jean for extradition.

Presently before this Court is Jean's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, which, as discussed further below, is Jean's sole means of obtaining review of Judge Falk's decision. By petitioning for habeas corpus, Jean challenges the legality of his

custody, which requires determining whether Judge Falk's decision is supportable—a deferential standard of review whose outcome rests on whether any evidence exists to justify a finding of probable cause. For the following reasons, the Court holds that Jean's custody and extradition are lawful, and will therefore deny the habeas petition.

## II. Statutory Framework and Standard of Review

The process for extraditing a person from the United States to a requesting country is laid out in 18 U.S.C. § 3184. A judge of the United States "or any magistrate judge authorized . . . by a court of the United States" [hereinafter a "judicial officer"] may issue warrants for the arrest of a person charged with committing a covered crime in a foreign jurisdiction, and may then determine whether extradition is appropriate under the terms of the relevant treaties. But "[t]he judicial officer's [extradition] inquiry is confined to the following: whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof." *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000). The final step requires the judicial officer to "determine[] [if] there is probable cause to believe that the defendant is guilty of the crimes charged." *Sidali v. INS*, 107 F.3d 191, 195 (3d Cir. 1997).

To find probable cause, the judicial officer must decide whether there is "'competent evidence to justify holding the accused to await trial, and *not* . . . whether the evidence is sufficient to justify a conviction.'" *Id.* at 199 (emphasis added) (quoting *Peters v. Egnor*, 888 F.2d 713, 717 (10th Cir. 1989)). "[P]roperly authenticated '[d]epositions, warrants, or other papers . . . offered in evidence upon the hearing of any extradition case shall be received and

admitted as evidence [at the] hearing.'" *Harshbarger v. Regan*, 599 F.3d 290, 293 (3d Cir. 2010) (quoting 18 U.S.C. § 3190). Hearsay evidence is also admissible. *Id.*

If the answer to the probable-cause question is "yes" and the other factors are satisfied, extradition can proceed. The judicial officer "makes a finding of extraditability and certifies the case to the Secretary of State." *Sidali*, 107 F.3d at 195.

Once the judicial officer has acted, his/her decision is not a final order under 28 U.S.C. § 1291. It cannot be appealed directly. Instead, a person detained pending extradition may petition in district court for writ of habeas corpus under § 2241, in effect challenging the legality of the custody brought about by the judicial officer's order. *See Harshbarger*, 599 F.3d at 291–92 & n.1.

The district court's habeas review is very deferential. Extradition is an executive function, not a judicial one, and the habeas court does not engage in a wholesale reweighing of the equities supporting extradition. *See Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) ("Th[e] writ . . . is not a means for rehearing what the [judicial officer] already has decided."). Instead, the habeas court—this Court—considers only "whether the [judicial officer] had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was *any evidence* warranting the finding that there was reasonable ground to believe the accused guilty." *Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006) (quotation marks & citation omitted, emphasis added). This is akin to abuse-of-discretion review. *See Bolanos v. Avila*, No. 09-1208, 2009 WL 3151328, at *3 (D.N.J. Sept. 24, 2009) (Linares, J.) (citing *Sidali*, 107 F.3d at 199); *see also Haxhiaj v. Hackman*, 528 F.3d 282, 287 (4th Cir. 2008) (describing district court habeas extradition review as "*at least* as deferential, if not more so, than that applied to a magistrate judge's decision to issue a search warrant" (internal quotation marks & citations

3

omitted)); *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976) ("Orders of extradition are *sui generis*. They embody no judgment on the guilt or innocence of the accused but serve only to insure that his culpability will be determined in another and, in this instance, a foreign forum.").

### III. Procedural History

An arrest warrant for Jean was issued on January 17, 1996 in Canada, under the charge of first-degree murder, Canada Criminal Code, R.S.C., 1985, c. C-46, § 235. Canadian investigators learned that he had purchased a one-way ticket to Newark, New Jersey, for December 28, 1995, and a "Wanted" poster reproduced in the record reflected their belief that he might be residing in New Jersey. Apparently, as of 2013, Jean lived in Irvington as an undocumented immigrant under an assumed name. When he submitted an application for citizenship with the United States Citizenship and Immigration Services, his fingerprints hit the system, alerting Canadian authorities.

The original extradition complaint was filed on March 19, 2013. Jean was arrested a week later. [*See* D.N.J. Civ. No. 2:13-mj-03588 D.E. 1, 4.]

Before Judge Falk, Jean was represented by the office of the Federal Public Defender, through which he brought a limited challenge to his impending extradition to Canada that focused on an alleged lack of probable cause. Jean contended that "the Government does not present sufficient evidence to establish probable cause that he was involved in the murder for which he is a suspect." (Jean Extradition Resp. Br. 1 [D.N.J. Civ. No. 2:13-mj-03588 D.E. 12].) He denied that he had any involvement in Pierre's death. (Jean Extradition Resp. Br. 2.) And emphasizing the limitations placed on him in an extradition proceeding (Jean Extradition Resp. Br. 5), he argued that the record evidence could not support extradition to Canada:

4

> When viewed holistically, the evidence suggests only that someone killed the victim and that Jean and others may have been in close proximity to the crime scene within several days or weeks of the crime. The Government does not provide any sworn affidavits of any persons who conducted the investigation or were interviewed in connection with the murder. The Government does not offer any reports, depositions, physical evidence, or any other evidence. Given the significant reliability concerns of uncorroborated hearsay evidence, the staleness of any evidence still in existence, the absence of critical evidence, and poor investigation practices generally, the Government's case cannot amount to probable cause.

(Jean Extradition Resp. Br. 7–8.)

After *sua sponte* finding that the pending charges fell within the applicable treaty, Judge Falk held that "the Government's proofs meet the limited threshold of probable cause and are sufficient to support extradition." As to Jean's challenge to the reliability of the evidence, Judge Falk emphasized that probable cause is a "relatively low standard" that the proofs offered in support of extradition satisfied.

Jean petitioned this Court for writ of habeas corpus on September 6, 2013.[1]  [D.E. 1.] The Court has considered Jean's counseled brief in support of his petition [D.E. 6] and the government's response [D.E. 9]. Jean has not filed a reply.

## IV. Discussion

**A) Jean's Arguments**

The claims advanced in support of the habeas petition mirror those raised before Judge Falk. Jean does not challenge Judge Falk's jurisdiction or the finding that the charged offense falls within the extradition treaty between the United States and Canada, arguing instead that his

---

[1] The petition was originally styled as emergent due to Jean's concerns that he would be extradited or otherwise transferred during the pendency of these proceedings, potentially mooting his request for relief. (*See* Pet. ¶¶ 11–12.) The government confirmed at a status conference, and later via letter [D.E. 2], that Jean would not be extradited to Canada during the pendency of these proceedings.

incarceration is unlawful solely "because the Government has not presented sufficient evidence to establish probable cause that . . . Jean was involved in the murder for which he is a suspect." (Pet'r.'s Br. 7.)

At issue is the reliability of the information contained in the United States' supporting documents—specifically, in "Appendix D," prepared by Detective Sergeant Antonio Paradiso of the Montreal Police, which contains the factual history supporting the extradition request. Jean characterizes Appendix D as an "uncertified document that summarizes a list of nearly twenty year old allegations from an unknown source." (Pet'r.'s Br. 8.) He emphasizes that Paradiso played an unspecified "role in the investigation" and that "his source of information in preparing the document [is] not explained." (Pet'r.'s Br. 8.) Arguing that Paradiso does not establish the basis of his personal knowledge, did not try to verify or corroborate the hearsay statements, and did not explain the extent of his participation in the investigation, Jean asserts that Appendix D is not reliable. (Pet'r.'s Br. 10–11.) Jean relies on *Illinois v. Gates*, 462 U.S. 213 (1983), and *United States v. Ritter*, 416 F.3d 256 (3d Cir. 2005), for the proposition that Judge Falk was required to examine the veracity and basis of knowledge of persons supplying hearsay information, and request corroborating information if necessary. (*See, e.g.*, Pet'r.'s Br. 9–10 (citing *Gates*, 462 U.S. at 231–34, 239).) Jean also describes Appendix D as "unsworn" and not in the character of an affidavit. (Pet'r.'s Br. 11.) Finally, he notes that the information provided relates to incidents in the past and argues it is "remote" and "dated," and that Judge Falk should have taken this into account in the probable cause determination. (*See* Pet'r.'s Br. 14–17 (citing, inter alia, *United States v. Harvey*, 2 F.3d 1318 (3d Cir. 1993)).)[2]

---

[2]    Jean takes issue with the photographs and fingerprints attached to the United States' submission. With regard to the former, he says that only one of the photographs is actually of

6

**B) Magistrate Judge Falk Properly Considered the Evidence**

       1) *The Proffer Meets Statutory and Treaty Requirements*

In an extradition hearing:

Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, *and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required*.

18 U.S.C. § 3190 (emphasis added). Among the documents submitted to the Court in support of extradition is the sworn declaration by Alexis Blane, an Attorney-Adviser in the State Department's Office of the Legal Adviser. Blane represents that the materials provided by Canada were certified by Sylvia Johnson, Counsel General of the United States in Ottawa, in accordance with § 3190 (Blane Decl. ¶ 6); Johnson's certification follows. The record also contains a certificate of authentication by Cathy Chalifour, counsel for the International Assistance Group for the Department of Justice of Canada, and the sworn declaration of Dany Jean, the prosecuting attorney for the Director of Criminal and Penal Prosecutions of Québec and the person with the power to begin proceedings against Jean. The latter statement, offered under the terms of the extradition treaty between the United States and Canada, is the main document to which Appendix D is attached. These are the same documents that were before Judge Falk.

---

him. He has not attached a statement to that end, which in any event would likely be of the "contradictory" kind of evidence not generally admissible at extradition proceedings. *See Hoxha*, 465 F.3d at 561. In any event, the Court understands the photograph to be merely an illustration of the allegation, contained in Appendix D, that Jean was photographed wearing something perceived to be similar to a bracelet discovered at the crime scene, discussed further *infra*. With regard to the fingerprints, the Court assumes they were provided as an illustration of how Jean was eventually taken into custody, and not as a suggestion that he was linked to the crime itself by fingerprint evidence.

As a preliminary matter, the Court finds that this proffer complies with § 3190. Jean does not challenge statutory adherence, and this Court is not entitled to second guess Canada's compliance with its own laws or probe behind its certification. *See Skaftouros v. United States*, 667 F.3d 144, 147 (2d Cir. 2011). Because the materials satisfy § 3190, they are "authenticated in the manner required" for use in these proceedings.

The Court also holds that the proffer complies with the relevant treaty. Specifically, Article 10 establishes that "documentary evidence in support of a request for extradition or copies of these documents *shall be admitted in evidence* in the examination of the request for extradition when, in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada." Treaty on Extradition, U.S.-Can., art. 10(2), Dec. 3, 1971, 27 U.S.T. 983 (emphasis added).

2) *The Evidence is Otherwise Reliable*

Jean's challenges to the reliability of the evidence are not supported by the case law. For example, several courts have said that unsworn documents can support a probable cause determination. In *Manta v. Chertoff*, 518 F.3d 1134 (9th Cir. 2008), the Ninth Circuit construed § 3190 and similar treaty language to hold that unsworn statements were competent evidence. *See id.* at 1146. And in *Skaftouros*, the Second Circuit relied on *Collins v. Loisel*, 259 U.S. 309, 317 (1922), for the proposition that "unsworn statements of absent witnesses may be considered" in extradition proceedings. *Skaftouros*, 667 F.3d at 155 n.16.

Jean urges, nevertheless, the Court to find this authority, and that relied upon by Judge Falk, to be distinguishable. He argues, for instance, that *Afanasjev v. Hurlburt*, 418 F.3d 1159 (11th Cir. 2005), which Judge Falk cited, is distinguishable because the unsworn statement in

*Hurlburt* was "106-page[s] . . . describ[ing], in significant detail, Appellants' alleged fraudulent activities" listing "the specific dates of events, includes the names of witnesses and victims, and details the amount of money that was involved in each transaction." *Hurlburt*, 418 F.3d at 1165. However, the crime in *Hurlburt* was a complex financial scheme spanning almost two years. *See id.* at 1161. As it turns out, Appendix D does list the names of witnesses and contains the specific dates of known events. That the statements are hearsay is of no moment.[3] Further, that some evidence is "alluded to" rather than "reproduced"—for example, the police reports from which witness statements were presumably extracted are not in the record—does not diminish the validity of what is satisfactorily described. And although Jean charges that Paradiso lacked "personal knowledge" of the underlying facts, the record shows that prosecuting attorney Dany Jean, who *did* have personal knowledge of the facts, specifically incorporated Paradiso's statement. In any event, Jean bears the burden of elevating his allegations of Paradiso's lack of personal knowledge above mere speculation. *Skaftouros*, 667 F.3d at 158, 162–63 (emphasizing that the burden is on the petitioner in an extradition proceeding). He has not done so.

Finally, Jean suggests that the evidence should have been rejected because it is stale. The cases upon which he relies are distinguishable. *United States v. Harvey*, 2 F.3d 1318 (3d Cir. 1993), is a search-warrant case. *See id.* at 1321–22. When an officer presents evidence in support of searching a particular location, the freshness of evidence is clearly relevant to the probable cause decision. When a person is accused of a crime, however, facts that support culpability do not age, nor does their importance necessarily fade with the passage of time.

---

[3] Nor, for that matter, does Jean successfully draw parallels between the statements contained in Appendix D and cases involving anonymous tips or unidentified sources. The parties whose statements are compiled in Appendix D are all identified both by name and in terms of their relationship to the parties and the investigation.

Nowhere does the law prohibit statements from the past from being considered probative in an extradition. Jean's reliance on *Wilson v. Garcia*, 471 U.S. 261 (1985), is also misplaced. *Wilson*'s discussion of the "repugnan[ce]" of federal actions "brought at any distance of time" arises in the context of limitations on 42 U.S.C. § 1983 civil suits, *see id.* at 271, and has no relevance to extradition.

Thus, for the reasons stated above, the Court holds that the proffer was properly admitted and considered during the extradition proceeding.

### C) The Evidence Supports a Finding of Probable Cause

Left remaining is the "extremely limited" inquiry of whether "'any evidence warrant[s] the finding that there [i]s reasonable ground to believe [Jean is] guilty.'" *Sidali*, 107 F.3d at 195–96 (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312 (1923)).

Appendix D is a narrative that establishes, in detail, why police suspect Jean's involvement in the murder of Pierre. Some of the relevant facts include: 1) that Jean was the last person to be seen with Pierre; 2) that Jean borrowed a hammer during the time frame of the murder, which was relevant to the condition of Pierre's apartment after the murder (her carpet had been nailed down to hide a bloody stain); and 3) that a piece of jewelry possibly belonging to Jean was found at the crime scene. The police interviewed neighbors and relatives who spoke of Jean's erratic and unusual behavior in the days following the crime. Jean's cousin, Cadet Alourdes, told the police that Jean tried to stash his car with her, as he feared that police would arrest him. Marie Luce Alteme testified that Jean came to her house and asked Alteme to relinquish custody of Pierre's daughter, whom she had been babysitting (Alteme refused because she did not have Pierre's permission). Jean's relationship with Pierre was alleged to be contentious, and he fled the country shortly after the crime was committed, living under an

assumed name in New Jersey for over two decades. *See Esposito v. Adams*, 700 F. Supp. 1470, 1477 (N.D. Ill. 1988) (finding flight and change of identity to be part of the probable-cause determination in an extradition proceeding). The *Sidali* standard—whether any evidence warrants the finding that there is reasonable ground to believe Jean is guilty—is easily met on the above facts.

## VI. Conclusion

For the foregoing reasons, the Court denies Jean's habeas petition by appropriate order.[4]


March 5, 2014                              /s/ Katharine S. Hayden
                                           Katharine S. Hayden, U.S.D.J.

---

[4] The Court need not consider whether a certificate of appealability is warranted when denying a federal detainee's § 2241 petition. *See McCarthy v. Warden*, 735 F.3d 128, 130 n.1 (3d Cir. 2013); *see also Murphy v. United States*, 199 F.3d 599, 601 n.2 (2d Cir. 1999) (per curiam) (emphasizing that no certificate of appealability was needed to appeal the denial of a § 2241 petition related to an extradition to Canada).